# 22-1222

In the

# United States Court of Appeals
## For the Second Circuit

✦

IN RE: ARCAPITA BANK B.S.C.(C),

*Debtor.*

_____

BAHRAIN ISLAMIC BANK,

*Appellant.*

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
ARCAPITA BANK B.S.C.(C), ET AL.,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

## REPLY BRIEF FOR APPELLANT

K&L GATES LLP
*Attorneys for Appellant*
599 Lexington Avenue
New York, New York 10022
(212) 536-3900
john.bicks@klgates.com
brian.koosed@klgates.com
robert.honeywell@klgates.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................iv

PRELIMINARY STATEMENT ............................................................1

ARGUMENT

I.  THE COMMITTEE DELIBERATELY OBSCURES
    THE APPLICABLE STANDARD OF REVIEW...................................5

II. THE COMMITTEE HAS NOT POINTED TO ANY
    WRONGFUL ACT BY BISB IN THE U.S. TO
    SUPPORT PERSONAL JURISDICTION UNDER
    *LICCI* AND *DAOU*...................................................................8

    A.  The Committee Cannot Show that the District Court in
        *Arcapita I* Addressed Any of Its Claims Besides the
        Preference Claim .........................................................8

    B.  The Committee's Claim of an "Obvious" Nexus Between the
        New York Wire and Its Breach of Contract and Turnover
        Claims Does Not Pass the Test of *Licci* and *Daou* ....................10

    C.  BisB Did Not "Waive" Its Request for the Bankruptcy Court
        to Consider New Evidence on the Parties'
        Choice of Currency.....................................................13

III. THE U.S. DOES NOT HAVE A STRONGER
     INTEREST IN THIS DISPUTE SOLELY BASED ON
     A MOMENTARY CONTACT WITH THE U.S.
     BANKING SYSTEM ........................................................14

    A.  BisB Never Argued for Adjudicatory Comity and
        Never "Waived" Its Argument that the CBB
        Opened a Regulatory Proceeding .................................15

i

    B. The New York Wire Does Not Give the U.S. a
       Stronger Regulatory Interest in This Dispute
       Than Bahrain ...............................................................17

    C. A True Conflict Exists Because the Committee
       Seeks Equitable Relief Under Section 553 of the
       Bankruptcy Code That Does Not Exist in Bahrain ....................18

IV. BISB'S EXERCISE OF SETOFF DID NOT BREACH
    ITS CONTRACT WITH ARCAPITA AND CANNOT
    BE "DISALLOWED" ON EQUITABLE GROUNDS........................20

    A. BisB's Exercise of Setoff Was Proper Under
       Bahraini Law and Not a Breach of Contract ..............................21

    B. This Court Should Apply a Plain Language
       Review of BisB's Statutory Setoff Rights Under
       the Bahraini Civil Code ...............................................22

    C. The Lower Courts Erred by Relying on Section
       553 and Equitable Principles to "Disallow"
       BisB's Setoff...............................................................23

V. THE BANKRUPTCY COURT HAD NO
    AUTHORITY TO FIND A STAY VIOLATION
    BECAUSE IT LACKED JURISDICTION OVER
    BISB...............................................................................25

VI. THE LOWER COURTS ERRED BY IGNORING
    BAHRAINI LAW AND SHARI'A PRINCIPLES
    THAT PROHIBIT INTEREST FOR THE DELAYED
    PAYMENT OF A DEBT.......................................................25

    A. Shari'a Principles, Which Govern Bahraini Law, Absolutely
       Prohibit Interest for a Debtor's Delay in Paying a Debt...........26

    B. The Bankruptcy Court Abused Its Discretion in Awarding
       Prejudgment Interest at the 9% New York Rate......................28

CONCLUSION .................................................................................29

CERTIFICATE OF COMPLIANCE ....................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*
   *(In re Vitamin C Antitrust Litig.),*
   8 F.4th 136 (2d Cir. 2021)........................................................6, 17, 20

*Averbach v. Cairo Amman Bank,*
   No. 19-cv-0004-GHW-KHP, 2020 WL 486860
   (S.D.N.Y. Jan. 21, 2020)....................................................................14

*Bahrain Islamic Bank v. Arcapita Bank B.S.C.(c)*
   *(In re Arcapita Bank B.S.C.(c)),*
   640 B.R. 604 (S.D.N.Y. 2022) (*"<u>Arcapita V</u>"*) ........................................*passim*

*Carco Grp., Inc. v. Maconachy,*
   718 F.3d 72 (2d Cir. 2013)...................................................................7

*Charles Schwab Corp. v. Bank of Am. Corp.,*
   883 F.3d 68 (2d Cir. 2018)...................................................................9

*Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.,*
   120 F. Supp. 2d 401 (S.D.N.Y. 2000)...............................................12

*Dandong v. Pinnacle Performance Ltd.,*
   966 F. Supp. 2d 374 (S.D.N.Y. 2013)...............................................11

*Daou v. BLC Bank, S.A.L.,*
   42 F.4th 120 (2d Cir. 2022)........................................................*passim*

*Doe v. E. Lyme Bd. of Educ.,*
   962 F.3d 649 (2d Cir. 2020).................................................................7

*Eldesouky v. Aziz,*
   No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)..........11

*Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.,*
   67 F.3d 1063 (2d Cir. 1995).................................................................7

iv

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
   40 F.4th 56 (2d Cir. 2022)..........................................................................6

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
   397 F. Supp. 3d 323 (S.D.N.Y. 2019)...................................................12

*Gelfand v. Tanner Motor Tours, Ltd.,*
   339 F.2d 317 (2d Cir. 1964)...................................................................13

*Johnson v. Ward,*
   4 N.Y.3d 516 (2005) ...............................................................................13

*Licci v. Lebanese Canadian Bank, SAL,*
   673 F.3d 50 (2d Cir. 2012)....................................................2, 8, 10, 11

*Maxwell Comm'n Corp. v. Societe Generale*
*(In re Maxwell Comm'n Corp.),*
   93 F.3d 1036 (2d Cir. 1996)............................................................*passim*

*NIKE, Inc. v. Wu,*
   349 F. Supp. 3d 346 (S.D.N.Y. 2018)..............................................11, 12

*Nuss v. Sabad,*
   No. 7:10-cv-279, 2011 U.S. Dist. LEXIS 157287
   (N.D.N.Y. Sep. 7, 2011)....................................................................11, 13

*Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) v.*
   *Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c)),*
   529 B.R.57 (Bankr. S.D.N.Y. 2015) *("<u>Bankruptcy PJ Order</u>")* ..............*passim*

*Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) v.*
   *Bahrain Islamic Bank,*
   549 B.R. 56 (S.D.N.Y. 2016) *("<u>Arcapita I</u>")* ...........................................*passim*

*Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) v.*
   *Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c)),*
   575 B.R. 229 (Bankr. S.D.N.Y. 2017) *("<u>Arcapita II</u>")* ...........................3, 6, 15

*Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) v.*
    *Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c)),*
    628 B.R. 414 (Bankr. S.D.N.Y. 2021) ("*Arcapita III*")............................*passim*

*Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) v.*
    *Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c)),*
    633 B.R. 207 (Bankr. S.D.N.Y. 2021) ("*Arcapita IV*").......................27, 28, 29

*Official Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co.*
    *(In re Bennett Funding Grp.),*
    212 B.R. 206 (B.A.P. 2d Cir. 1997).................................................................6-7

*Thomas v. iStar Fin., Inc.,*
    629 F.3d 276 (2d Cir. 2010)...........................................................................29

*U.S. SEC v. Terraform Labs Pte Ltd.,*
    No. 22-368, 2022 WL 2066414 (2d Cir. June 8, 2022)....................................5

*U.S. v. Dauray,*
    215 F.3d 257 (2d Cir. 2000)...........................................................................23

**Rules, Laws and Statutes**

11 U.S.C. § 553........................................................................................*passim*

Bahraini Civil Code, Article 28 ......................................................................19

Bahraini Civil Code, Article 140 ....................................................................28

Bahraini Civil Code, Article 188 ....................................................................28

Bahraini Civil Code, Article 223 ....................................................................28

Bahraini Civil Code, Article 238 ....................................................................19

Bahraini Civil Code, Article 353 ................................................................21, 22

Bahraini Civil Code, Article 354 ................................................................21, 22

Bahraini Civil Code, Article 355 ................................................................21, 22

Bahraini Civil Code, Article 356 ................................................................21, 22

Bahraini Civil Code, Article 357 .................................................................21, 22

Bahraini Civil Code, Article 358 .................................................................21, 22

Bahraini Civil Code, Article 359 .................................................................21, 22

Bahraini Civil Code, Article 360 .................................................................21, 22

## Secondary Authorities

Accounting and Auditing Organization for Islamic Financial Institutions
(AAOIFI), Standard No. (3).................................................................26, 27

## <u>PRELIMINARY STATEMENT</u>[1]

In its opposition brief, the Committee claims – as it has throughout this litigation – that this Bahraini law contract dispute between Bahraini banks belongs in the U.S. because of a single, momentary wire through correspondent bank accounts in New York that preceded, in time, the parties' later dispute over whether BisB was legally required to remit the investment proceeds at issue to Arcapita.

All of the parties' conduct both before and after the New York wire occurred in Bahrain.  Arcapita proposed the investment by calling BisB in Bahrain on March 14, 2012; the parties then negotiated the investment in Bahrain.  The wire from Arcapita's New York account to BisB's, then on to BisB's account in Bahrain, happened later that day.  Arcapita filed for bankruptcy on March 19, 2012.  The investment proceeds were due to mature on March 29, 2012.  BisB asserted setoff against those proceeds in Bahrain in June 2012.  This suit ensued.

In its brief, the Committee claims that the single March 14 wire at the beginning of this chain of events is the dispositive, "but for" occurrence that locks jurisdiction of this dispute in the U.S. courts.  As the Committee puts it, the New York wire is the "obvious" nexus between the U.S. and *all* of its claims, the

---

[1]    Capitalized terms used but not defined herein have the meaning set forth in BisB's opening brief, referred to as "<u>BisB Br.</u>"  The Committee's opposition brief is referred to as "<u>Comm. Br.</u>"

"precipitating event" here. Comm. Br. at 22, 35; *see also id.* at 23 ("Quite simply: this case *does not exist* without the New York wire transfer.") (italics in original).

But the Committee's simplistic argument fails the Court's tests for personal jurisdiction in *Licci* and *Daou*, and for prescriptive comity abstention in *Maxwell II*. The single New York wire here is the only connection between the United States and this breach of contract dispute, which turns completely on whether BisB's **later** conduct in Bahrain breached Bahraini law. No amount of rhetorical flourish by the Committee can obscure that fact.

The easiest way to cut through the Committee's rhetoric is to go back to the Committee's complaint that began this suit. (A361.) Every claim (besides the preference claim, which was pleaded in the alternative) is based on BisB's alleged conduct *in Bahrain*, beginning on *March 29, 2012 – i.e.*, over two weeks after the New York wire. Consider the Committee's claims:

- Breach of contract (Count I, *id.* ¶¶ 38-42): BisB breached the parties' *murabaha* investment contract by failing to return the investment proceeds on their maturity date (*i.e.*, March 29, 2012). *Id.* at ¶ 2.

- Turnover (Count II, *id.* ¶¶ 43-48): "At maturity," (*i.e.*, March 29), BisB owed the investment proceeds.

- <u>Stay violation (Count IV, *id.* ¶¶ 58-65)</u>: BisB's retention of the investment proceeds and assertion of setoff (in June 2012) violated the Bankruptcy Code.

- <u>Claim disallowance (Count V, *id.* ¶¶ 66-69)</u>: Any bankruptcy claims by BisB should be disallowed pending BisB's payment of the proceeds.

Faced with these claims and facts, the Bankruptcy Court initially, and correctly, held that BisB's sole contact with the U.S. here – "the one-off use of the correspondent account by BisB" to receive the New York wire – was "an act which no party has alleged was improper," and "unrelated to the setoff issue, let alone central to its adjudication." Bankruptcy PJ Order, 529 B.R. 57, 71 (Bankr. S.D.N.Y. 2015).

No amount of "but for" argumentation can save the Committee's suit from these dispositive facts. The Bankruptcy Court's original ruling on personal jurisdiction should be affirmed, the District Court's mistaken reversal in *Arcapita I* should be reversed, and the Bankruptcy Court's subsequent prescriptive comity ruling in *Arcapita II* (based on the ruling in *Arcapita I*) should also be reversed. Simply put, this contract dispute should have been left for resolution in Bahrain, and the Committee's forum-shopping should finally come to an end.

Faced with the weakness of its personal jurisdiction and comity arguments, the Committee attempts to obscure the applicable standards of review on appeal. Other than for personal jurisdiction, the Committee asserts an abuse of discretion standard applies for *every* other issue. Comm. Br. at 4. But, as detailed in BisB's opening brief, the applicable standard for almost every issue here is *de novo* review, not the more deferential review the Committee wishes were applicable. BisB. Br. at 20-22; *infra* at 5-7.

The Committee further attempts to muddy the core legal issue in this dispute: whether BisB's assertion of setoff breached the parties' contract under Bahraini law. First, the Committee splits up its breach of contract argument into two parts (Parts III and IV), and begins its argument with a misdirection: "Bankruptcy Code Section 553 governs setoffs." Comm. Br. at 38. It then goes on to blend an argument about Bahraini law – relying almost exclusively on the CBB's regulatory directive issued *after* BisB exercised its setoff rights, rather than on Bahraini contract law in place at the time – with an extremely broad invocation of the Bankruptcy Court's purported equitable discretion to "reject" BisB's setoff.

In short, the Committee tries very hard to transform the central *legal* issue in this dispute from a question of *Bahraini law* (the permissibility of BisB's setoff under Bahraini law) into one of *U.S. bankruptcy law* (whether the Bankruptcy Court had the *equitable* power to unwind BisB's setoff). The Committee seeks to

thereby "disallow" BisB's setoff, even though it was permitted under Bahraini law at the time it was exercised and therefore did *not* breach its contract with Arcapita.

The courts below unfortunately followed the Committee's lead, feeling themselves at liberty to inject U.S. equitable principles into this foreign breach of contract dispute. This was error. As set forth below, the Committee's arguments should be rejected, and the lower courts' rulings should be reversed.

## ARGUMENT

## I. THE COMMITTEE DELIBERATELY OBSCURES THE APPLICABLE STANDARD OF REVIEW

BisB's opening brief correctly sets forth the standard of review for the five issues in this appeal, citing this Court's precedents. BisB Br. at 20-22. The Committee responds by ignoring these precedents, instead relying on precedents that are wholly distinguishable. Comm. Br. at 4.

On personal jurisdiction, the Committee cites *Terraform Labs*, where the SEC sued to enforce an investigative subpoena. Comm. Br. at 4 (citing *U.S. SEC v. Terraform Labs Pte Ltd.*, No. 22-368, 2022 WL 2066414, at *1 (2d Cir. June 8, 2022), *petition for cert. docketed* (Oct. 11, 2022)). In contrast, BisB cited the Court's *Daou* ruling, which matches the procedural profile of this appeal: review of a trial court's dismissal for lack of personal jurisdiction. *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 128 (2d Cir. 2022) ("*Daou*").

On comity, the Committee cites the *Esso* case for an abuse of discretion standard. Comm. Br. at 4 (citing *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 72 (2d Cir. 2022)). But *Esso* involved a review of a district court's deference to a Nigerian court judgment. *Id.* at 61, 72. This is known as *adjudicatory* comity, or "comity among the courts." *Arcapita II*, 575 B.R. 229, 238 (Bankr. S.D.N.Y. 2017). But notwithstanding the Committee's attempt to argue otherwise, Comm. Br. at 30-34, BisB has **never** argued for adjudicatory comity in this litigation. *See infra* at 15. Instead, BisB has argued only for *prescriptive* comity – *i.e.*, on limiting the reach of the Bankruptcy Court's jurisdiction over this Bahraini law contract dispute – which is subject to *de novo* review. BisB Br. at 21.[2]

On the Committee's breach of contract claim under Bahraini law, the Committee frames the issue as whether the Bankruptcy Court had discretion to "allow or disallow setoff" and cites *Bennett Funding* for an abuse of discretion standard. Comm. Br. at 4. But *Bennett Funding* involved a motion to lift the automatic stay under Section 362 of the Bankruptcy Code. *Official Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Grp.)*, 212

---

[2]    In any case, this Court has made clear that the standard of review for adjudicatory comity is "an unusually rigorous abuse-of-discretion standard that leaves 'little practical distinction between review for abuse of discretion and review *de novo*.'" *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 8 F.4th 136, 142 n.7 (2d Cir. 2021) (quotation omitted).

B.R. 206, 209-10 (B.A.P. 2d Cir. 1997). No such motion has been filed here. Whether BisB breached its investment contract with Arcapita under Bahraini law is subject to review for clear error as to factual findings and *de novo* review as to conclusions of Bahraini law and mixed questions of fact and Bahraini law. BisB Br. at 21.

On prejudgment interest, the Committee asserts an abuse of discretion standard, citing the *Doe* and *Endico* cases. Comm. Br. at 4 (citing *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 661 (2d Cir. 2020)); Comm. Br. at 50 n.36 (citing *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995)). But both of those cases involved unique statutory remedies under U.S. federal statutes, where the trial courts were granted broad discretion to fashion appropriate relief. *Doe*, 962 F.3d at 659 (equitable relief for violations of the Individuals with Disabilities Education Act); *Endico*, 67 F.3d at 1071-72 (damages for breaches of the Perishable Agricultural Commodities Act). In contrast, BisB cited the *Carco* case, which is on all fours with the procedural posture here: a state law breach of contract judgment for which *de novo* review of the trial court's underlying legal interpretations was required. BisB Br. at 22 (citing *Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 79-80, 87-88 (2d Cir. 2013)).

## II. THE COMMITTEE HAS NOT POINTED TO ANY WRONGFUL ACT BY BISB IN THE U.S. TO SUPPORT PERSONAL JURISDICTION UNDER *LICCI* AND *DAOU*

In claiming personal jurisdiction lies over BisB, the Committee unsurprisingly elides BisB's core argument: that the Committee bears the burden of showing personal jurisdiction as to *each* of the claims in its complaint, and the District Court in *Arcapita I* addressed only the Committee's preference claim (Count III). BisB Br. at 22-32. As BisB noted, the District Court was silent on the breach of contract and turnover claims that later formed the basis of BisB's liability on summary judgment in *Arcapita III*. *See id.*

In response, the Committee claims that the District Court's silence has no legal import – that it vacated the entire Bankruptcy PJ Order, or that its ruling on the Committee's preference claim created "pendent personal jurisdiction" as to the remaining claims. Comm. Br. at 29-30 n.16. Or, in the further alternative, the Committee argues that under the Court's *Licci* and *Daou* rulings, there is an "obvious" nexus between the parties' use of New York bank accounts and all of the Committee's claims. *Id.* at 22-23. Each argument fails.

### A. The Committee Cannot Show that the District Court in *Arcapita I* Addressed Any of Its Claims Besides the Preference Claim.

The Committee cannot point to any discussion by the District Court in *Arcapita I* of the connection between its claims and the U.S. – other than the preference claim – because it is simply not there. *Arcapita I*, 549 B.R. 56, 67-72

(S.D.N.Y. 2016). *Arcapita I* says nothing about personal jurisdiction over BisB for the Committee's other claims for breach of contract, turnover, stay violation, and claim disallowance.[3]

Given the District Court's silence in *Arcapita I*, the Court should apply its *de novo* review for each of these other claims to the Bankruptcy Court's reasoning in its original personal jurisdiction ruling. *See* Bankruptcy PJ Order; BisB Br. at 20-21. Unlike the District Court in *Arcapita I*, the Bankruptcy Court analyzed *all* of the Committee's claims and found that all of them were based on conduct in Bahrain, except for the preference claim that became actionable solely because of Arcapita's decision to file for Chapter 11 relief in the U.S. BisB Br. at 4-5 (citing Bankruptcy PJ Order, 529 B.R. at 71).

---

[3] Nor does "pendent jurisdiction" over these other claims arise from the District Court's ruling on the preference claim, as argued by the Committee. Comm. Br. at 30 n.16. The Committee's reliance on the *Charles Schwab* case in this regard is misplaced because there the Court ruled that pendent jurisdiction may exist for federal and state law claims that are based on *common* factual elements of a cause of action. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018). Here, by contrast, the Committee's preference claim (based on Arcapita's alleged pre-petition payment of an "antecedent debt" to BisB) does not share the same factual elements as its other claims (based on BisB's post-petition setoff and non-payment of investment proceeds). *See supra* at 2-3; A361.

Indeed, *Charles Schwab* expressly held that claims based on conduct in the U.S. could not form the basis for personal jurisdiction over claims based on conduct in London. *Charles Schwab*, 883 F.3d at 83-84. So too here: any purported personal jurisdiction as to the Committee's preference claim based on the New York wire cannot confer personal jurisdiction over the Committee's other claims based on conduct in Bahrain.

The Bankruptcy Court's initial reasoning was thorough and should be adopted by this Court. All of BisB's allegedly wrongful conduct that forms the basis for the Committee's claims occurred in Bahrain. *See supra* at 1-3. In stark contrast, the Committee's complaint describes BisB's sole conduct in the U.S. – its receipt of Arcapita's New York wire – as creating "a valid, enforceable, and legally binding contract between Arcapita and [BisB]." (A361 ¶¶ 39, 44.) The Bankruptcy Court rightly held that the parties' use of the New York account was proper. Bankruptcy PJ Order, 529 B.R. at 71. It therefore cannot form the basis for personal jurisdiction over BisB here.

### B. The Committee's Claim of an "Obvious" Nexus Between the New York Wire and Its Breach of Contract and Turnover Claims Does Not Pass the Test of *Licci* and *Daou*.

Faced with this Court's rulings in *Licci* and *Daou*, the Committee asserts an "obvious" nexus between Arcapita's initial investment wire through the parties' New York bank accounts and all of the Committee's claims. Comm. Br. at 22-23. This is essentially a "but for" argument: that BisB's alleged post-bankruptcy (*i.e.*, post-petition) breach of contract would not have happened without the original pre-bankruptcy (*i.e.*, pre-petition) wire.

But this simplistic reasoning does not pass the Court's test laid out in *Licci* and *Daou*, which requires that the use of the New York account must *itself* be part of, or at least in furtherance of, the wrong targeted by a U.S. lawsuit. BisB Br. at

25-28.  Again, it is undisputed that the parties' use of New York correspondent bank accounts was proper.  Far from targeting it, the Committee admitted that it created a valid contract that it is seeking to enforce.  Bankruptcy PJ Order, 529 B.R. at 71; *see also* BisB Br. at 29-30, and *supra* at 10.

The Committee's reliance on the various cases it cites in this regard is misplaced.  Comm. Br. at 24-25.  Each case is consistent with *Licci* and *Daou*: they all involved the use of U.S. bank accounts to *directly* further the wrongs targeted by those lawsuits – specifically, claims of fraud, conversion, and counterfeiting – just as *Licci* and its progeny involved using U.S. bank accounts to further terrorism and money laundering.  *See* BisB Br. at 27-28 (citing cases).  In fact, a close review of the cases cited by the Committee shows that they involved the defendants' *receipt* of funds into New York bank accounts as part of schemes to defraud the plaintiffs or convert their funds or property.[4]

---

[4]    *See Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *2, 4, 6, 18 (S.D.N.Y. Dec. 19, 2014) (claim for conversion against New Jersey corporation based on its receipt of plaintiffs' wire into its New York bank account); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 374, 378-79, 382-84 (S.D.N.Y. 2013) (claims of fraud against Cayman Islands corporation that raised investor funds abroad and deposited them in New York bank accounts); *Nuss v. Sabad*, No. 7:10-cv-279, 2011 U.S. Dist. LEXIS 157287, at *3-12 (N.D.N.Y. Sep. 7, 2011) (fraud, conversion and other claims against individuals who received plaintiffs' funds into their New York bank account, then transferred the funds to a Mexican bank account to buy real estate in Mexico); *NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 351, 357-58 (S.D.N.Y. 2018) (post-judgment subpoena of Chinese banks who used New York correspondent bank accounts to process

Here, by contrast, the parties' use of New York correspondent bank accounts on March 14, 2012 *preceded* the alleged wrongs: BisB's *later* failure to remit the investment proceeds on the March 29 maturity date and *later* assertion of setoff in June 2012. The most the Committee can muster as a connection between the use of the New York accounts and BisB's later conduct is that the latter would not have happened without the former – *i.e.*, the "but for" argument noted above. Comm. Br. at 22-23. But this Court and New York courts have roundly rejected this approach where the allegedly conduct *did not occur in New York*.

*Daou* is the most recent example, and is on all fours with this appeal. There, this Court found that, *even if* the defendant banks used New York accounts to transfer the plaintiffs' funds into Lebanese bank accounts, this did not confer personal jurisdiction over the banks for the plaintiffs' breach of contract, fraud and other claims, because it was the banks' refusal to *return* the funds that was the targeted wrong, and *that* conduct occurred in Lebanon. *Daou*, 42 F.4th at 132 (to the extent the defendants used New York correspondent bank accounts to transfer

---

online sales of counterfeited goods); *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, 120 F. Supp. 2d 401, 403-05 (S.D.N.Y. 2000) (conversion claim against Bahamian bank based on unauthorized transfer of plaintiff's funds to a New York bank account to purchase securities through a New York broker); *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344-46 (S.D.N.Y. 2019) (claim of misappropriating oil production from Nigerian oilfield against Nigerian government entity, which transferred the oil proceeds into U.S. bank accounts), *aff'd*, 40 F.4th 56 (2d Cir. 2022).

the plaintiffs' funds "**into Lebanon in the first instance**," the connection between those transfers and the plaintiffs' claims was "merely coincidental") (emphasis added).[5]

This Court has thus firmly rejected the Committee's "but for" type of jurisdictional argument. Even if Arcapita's New York wire to BisB was necessary for BisB's later alleged breach of contract, that alleged wrongful conduct occurred solely in Bahrain. No personal jurisdiction thus exists over BisB in the U.S.

### C. BisB Did Not "Waive" Its Request for the Bankruptcy Court to Consider New Evidence on the Parties' Choice of Currency.

Finally, the Committee claims BisB "waived" its argument that new evidence showed Arcapita, not BisB, elected to use the U.S. dollar as the currency for Arcapita's *murabaha* investments. Comm. Br. at 19-20. This is wrong.[6]

---

[5]    *Daou* favorably cited *Johnson v. Ward*, another case where New York contact, followed by injury elsewhere, did not confer personal jurisdiction. 42 F.4th at 130, 132 (citing *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005)). One of the Committee's cited cases relies on similar precedent. *See Nuss v. Sabad*, 2011 U.S. Dist. LEXIS 157287, at *38 (citing *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317 (2d Cir. 1964) (no New York jurisdiction lied over a bus company that sold tickets in New York to the plaintiffs, who were injured riding out of state)).

[6]    The Committee also mischaracterizes the evidence on this issue, claiming BisB "formally initiated" Arcapita's investment and took a "leading role." Comm. Br. at 18, 21. The record is undisputed that all of Arcapita's three *murabaha* investments began when Arcapita called BisB to place them. BisB Br. at 12-13. The Committee also misleadingly describes the March 14 investment as "a hair north" of BisB's outstanding *murabaha* investments with Arcapita, implying a one-for-one exchange – presumably to bolster its "collusion" claim. Comm. Br. at

- 13 -

BisB originally raised this issue on its motion to dismiss, but the Bankruptcy Court found the evidence incomplete at that point. Bankruptcy PJ Order, 529 B.R. at 68 n.10. The District Court similarly acknowledged this in *Arcapita I*, finding there was insufficient evidence on the issue at the motion to dismiss stage. *Arcapita I*, 549 B.R. at 68 n.15. On summary judgment, BisB again asked the Bankruptcy Court to review the personal jurisdiction issue based on new evidence produced in discovery. (A2316 at A2349-50.) And BisB raised the issue again on appeal to the District Court. (A176 at A238-44.)

In sum, this issue has been raised from the start and preserved; in any case, the Bankruptcy Court had "an independent duty to determine whether personal jurisdiction exists." *Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2020 WL 486860, at *7 (S.D.N.Y. Jan. 21, 2020).

## III. THE U.S. DOES NOT HAVE A STRONGER INTEREST IN THIS DISPUTE SOLELY BASED ON A MOMENTARY CONTACT WITH THE U.S. BANKING SYSTEM

The Committee's argument against comity abstention is similar to its "but for" argument for personal jurisdiction: that the parties' initial New York wire was the "precipitating event" for the Committee's claims, so the U.S. has a stronger regulatory interest than Bahrain in this dispute. *Id.* at 34-36.

---

46. But the record is undisputed that Arcapita's three investments totaled $30 million – *i.e.*, not a one-for-one exchange at all. *Arcapita III*, 628 B.R. at 427-28.

This is insufficient to pass this Court's balancing test for comity abstention. Under that test, Bahrain clearly has the greater regulatory interest here, as evidenced by the lower courts' – and the Committee's – heavy reliance on the CBB's regulatory interests. This dispute belongs in Bahrain.

## A. **BisB Never Argued for Adjudicatory Comity and Never "Waived" Its Argument that the CBB Opened a Regulatory Proceeding.**

The Committee initially spends several pages responding to BisB's purported argument for adjudicatory comity, or "comity among the courts." Comm. Br. at 30-34. But BisB has never argued for adjudicatory comity in this case; rather, it has argued only for prescriptive comity. (On motion to dismiss: A441 (BisB Memo.) at A473-78; A535 (BisB Reply Memo.) at A553-55; A785 (BisB Supp. Br.) at A799-801; A820 (BisB. Supp. Reply Br.) at A829-30; on appeal of summary judgment: A176 (BisB Opening Br.) at A247-55; A6707 (BisB Reply Br.) at A6728-39.) It is undisputed that no foreign judicial proceedings have addressed this dispute. *Arcapita II*, 575 B.R. at 238.

The Committee further claims that BisB has "newly conjured" and "waived" its argument that the CBB's regulatory directive created a "parallel proceeding" in Bahrain, after purportedly arguing below that there was no such proceeding. Comm. Br. at 13, 31. This is misleading.

In arguing for prescriptive comity below, BisB used the term "parallel proceeding" to argue that prescriptive comity does not require that there be a *parallel foreign insolvency proceeding*, which the Committee claimed was necessary for prescriptive comity to apply. (A785 at A799-800; A820 at A829-30; Committee briefs: A480 (Comm. Obj. to Mot. Dismiss) at A489, A517; A803 (Comm. Supp. Response) at A816-17.)

Moreover, BisB's reference to the CBB's regulatory directive as opening a "regulatory proceeding" is consistent with the CBB's own description of it as a "regulatory process" (A1548-49); the Bankruptcy Court's description of it as a "proceeding," *Arcapita III*, 628 B.R. 414, 445 (Bankr. S.D.N.Y. 2021); and the Committee's current description of it as an "enforcement action." Comm. Br. at 42 n.27.

Setting aside the Committee's wordplay, BisB's point is a substantive one: this Court's application of the comity balancing test in *Maxwell II* included considering whether there was an *alternative mechanism* for the relief sought in the bankruptcy adversary proceeding there. The Court found that there was: a parallel insolvency proceeding in England that allowed a similar avoidance claim. *See Maxwell Comm'n Corp. v. Societe Generale (In re Maxwell Comm'n Corp.)*, 93 F.3d 1036, 1052 (2d Cir. 1996) ("*Maxwell II*"). But the Court in *Maxwell II* did not rule that such an alternative mechanism *must* be a foreign insolvency

proceeding – only that the availability of similar relief in the foreign state is one factor in the comity analysis. *See also In re Vitamin C Antitrust Litig.*, 8 F.4th at 144 n.9 (ten-factor balancing test for prescriptive comity includes "[a]vailability of a remedy abroad").

Here the Committee has such an alternative mechanism: judicial or regulatory relief in Bahrain. BisB made this point repeatedly to the Bankruptcy Court below. (A535 at A555 n.22 ("Plaintiff has access to a forum in Bahrain for any remedy to which it believes it is entitled").) As BisB stated at oral argument in March 2014:

> [T]his plaintiff is not without a remedy. If this plaintiff thinks
> that set off was inappropriate, this plaintiff . . . can go to
> Bahrain and challenge the legitimacy of the set-off, if it so
> chooses.

A562 at A636 (75:10-16). (*See also* A562 at A642-43 (81:22-82:9), A696-97 (135:24-136:11).) BisB made the same point to the District Court below. (A176 at A251; A6707 at A6738-39.)

## B. The New York Wire Does Not Give the U.S. a Stronger Regulatory Interest in This Dispute Than Bahrain.

As to the substance of prescriptive comity, the Committee asserts the U.S. has a stronger regulatory interest than Bahrain because the New York wire was the "precipitating event" for the Committee's claims. Comm. Br. at 35-36.

This is simply a restatement of the Committee's "but for" argument for personal jurisdiction, Comm. Br. at 22-23, which obscures the thin connection between the New York wire and *all other facts* in this dispute. *See supra* at 1-3.

The Committee further argues that Arcapita's Chapter 11 filing in the U.S. itself – coupled with the Committee's claims under the Bankruptcy Code – creates a sufficient U.S. regulatory interest. Comm. Br. at 35-36. But that approach would render the comity inquiry meaningless, making *all* bankruptcy adversary proceedings immune from comity abstention simply because they were part of a Chapter 11 case. That is not the law under *Maxwell II*.

### C. A True Conflict Exists Because the Committee Seeks Equitable Relief Under Section 553 of the Bankruptcy Code That Does Not Exist in Bahrain.

As to the "true conflict" requirement for comity abstention, the Committee takes the remarkable view that, because the CBB's directive instructed BisB to seek U.S. court approval for its setoff, such "Bahraini deference to the United States" warrants denial of comity abstention. Comm. Br. at 37.

This argument conveniently ignores BisB's own procedural rights to challenge the CBB's directive *in Bahrain* – as BisB did. BisB Br. at 15. Moreover, if a foreign regulator chooses to seek broader remedies available in the U.S. over enforcing its own directives in its own country, that merely confirms that a "true conflict" exists, because a foreign defendant could never expect that U.S.

law would apply to its foreign conduct undertaken in connection with its foreign-law contract. *See Maxwell II*, 93 F.3d at 1048 (part of the comity analysis includes the effect on "justified expectations").

The Committee's argument elides that this is what actually happened here: the courts below applied statutory and equitable restrictions on BisB's setoff rights under Section 553 of the Bankruptcy Code that simply do not exist in Bahrain. *Arcapita III*, 628 B.R. at 433-59; *Arcapita V*, 640 B.R. 604, 620-22, 627-29 (S.D.N.Y. 2022).

The Committee attempts to sidestep this conflict by claiming Bahrain *does* have setoff standards similar to Section 553(a)(3)(C). Comm. Br. at 37-38. But its citations to Bahraini statutes are inapposite: Article 28 of the Civil Code only generally speaks of the "unlawful" exercise of *any* right and does not mention setoff (A2480 (Nezar Raees expert report) at A2497-98), and Article 238 of the Civil Code only addresses preferential payments, similar to Section 547 of the Bankruptcy Code.[7] Neither statute imposes an "intent" requirement for disallowing setoff similar to Section 553(a)(3)(C), let alone the equitable considerations unique to U.S. bankruptcy law that the courts below cited to "disallow" BisB's setoff. *See Arcapita III*, 628 B.R. at 434 (even if the "technical

---

[7] The Committee's citation to both of these Bahraini statutes on the "true conflict" issue as applied to Section 553(a)(3)(C) is newly raised in its opposition brief, and was not raised to the courts below.

requirements" of setoff are satisfied, a U.S. bankruptcy court has the discretion, "in light of the Bankruptcy Code's goals and objectives," to "invoke equity to bend the rules" and disallow setoff); *Arcapita V*, 640 B.R. at 620 (same).

Prescriptive comity is a canon of statutory construction to "shorten the reach of a statute." *In re Vitamin C Antitrust Litig.*, 8 F.4th at 142 n.7. The lower courts erred by extending the reach of Section 553 to this contract dispute in Bahrain. Their comity rulings should be reversed.

## IV. BISB'S EXERCISE OF SETOFF DID NOT BREACH ITS CONTRACT WITH ARCAPITA AND CANNOT BE "DISALLOWED" ON EQUITABLE GROUNDS

On breach of contract, the Committee again tries to muddy rather than clarify, conflating two distinct inquiries: (i) whether BisB's exercise of setoff breached the parties' contract as a matter of Bahraini law; and (ii) what, if anything, the Bankruptcy Code has to say about BisB's setoff (even starting its breach of contract argument by stating, "Bankruptcy Code Section 553 governs setoffs"). Comm. Br. at 38-49.

The lower courts erred in following the Committee's lead, superimposing a broad equitable discretion over setoff onto this breach of contract suit. Simply put, the Committee's breach of contract claim must be evaluated under Bahraini contract law – not as a means for allowing the Bankruptcy Court to exercise its purported equitable discretion under U.S. law to *overrule* Bahraini law.

### A.   BisB's Exercise of Setoff Was Proper Under Bahraini Law and Not a Breach of Contract.

As to whether BisB's exercise of setoff breached Bahraini law, the Committee urges this Court to do what the lower courts erroneously did: ignore the Bahraini law in effect when BisB exercised its setoff rights (which shows that BisB's setoff was permitted under Bahraini law) and instead apply a subsequent, never-enforced directive issued by the CBB (which sought to retroactively turn BisB's properly exercised setoff into a breach of contract).

It is axiomatic that a breach of contract must be determined as of the time of the alleged breach.  Here, it is undisputed that when BisB exercised its setoff right, there was no superseding CBB law or directive in effect that would have altered BisB's right to perform its contractual obligations by exercising setoff.  To the contrary, when BisB exercised its setoff right, the only governing law at the time – Articles 353-360 of the Bahraini Civil Code – expressly permitted BisB's setoff. (*See* A1902 (Al Mansoori expert report) at A1912-14 ¶¶ 34-37; SPA71.)  Thus, BisB's setoff was valid when it occurred, thereby extinguishing BisB's duties under its contract with Arcapita (and eliminating any purported breach of contract claim).

The lower courts' – and the Committee's – repeated emphasis on the lack of any temporal limitation on the CBB's authority thus misses the point.  Whether or not the CBB could apply its directive retroactively to BisB's setoff is legally and

procedurally a matter of the enforcement of CBB's regulatory authority within Bahrain; it is *not* a question of whether BisB breached its contract by exercising setoff.

The lower courts thus confused this *breach of contract* issue with the *regulatory enforcement* issue. Indeed, the District Court even conceded that BisB "may have had a right of setoff" in June 2012, but nonetheless ruled that this "previously lawful" setoff *became* unlawful under the CBB's July 2012 directive. *Arcapita V*, 640 B.R. at 621. But this concedes that BisB's setoff did *not* breach Bahraini contract law when it occurred. The lower courts instead decided that they could use the CBB's regulatory authority as grounds to retroactively unwind a setoff and declare it a breach of contract after the fact. This was error.

**B.    This Court Should Apply a Plain Language Review of BisB's Statutory Setoff Rights Under the Bahraini Civil Code.**

BisB urges the Court, in its *de novo* review of the lower courts' interpretation of Bahraini law, to take a common-sense, plain language approach to BisB's statutory setoff rights under Sections 353-360 of the Bahraini Civil Code. The structure of this portion of the Civil Code makes clear that setoff is treated as one of several ways to extinguish a contractual obligation, all of which appear in the part of the Civil Code (Part V) entitled "The extinction of obligations," and a chapter (Chapter II) entitled "Methods of extinction of the obligation equivalent to performance," listing five such methods including setoff. (SPA66-71.)

Contrary to the Committee's claims (Comm. Br. at 48-49), this is not relying on "headers," but on the plain meaning and structure of these provisions of the Bahraini Civil Code. *See U.S. v. Dauray*, 215 F.3d 257, 260-61 (2d Cir. 2000) (courts must consider a statute's plain meaning and "its placement and purpose in the statutory scheme") (internal citations omitted).

### C.  The Lower Courts Erred by Relying on Section 553 and Equitable Principles to "Disallow" BisB's Setoff.

Perhaps recognizing the CBB's directive does not operate as a time machine to retroactively turn prior, valid contractual conduct into a breach, the Committee tries to portray BisB as a "bad actor" – even though much of the cited evidence relates to a different defendant in a separate suit (Adv. No. 13-1435) that has been resolved.  Comm. Br. at 9 n.4, 12, 46 n.32, 47.  Nevertheless, the Committee's efforts miss the mark.

First, the Committee tries to conflate the first inquiry above – whether BisB's *post-petition* setoff (in June 2012) breached its contract with Arcapita – with whether BisB's setoff was invalid under Section 553(a)(3)(C) of the Bankruptcy Code, which addresses the parties' intent in entering their *pre-petition* investment (on March 14, 2012).  But Section 553(a)(3)(C) is irrelevant to whether or not a breach of contract occurred under Bahraini law.

Again, the Committee's own complaint alleged that its breach of contract claim was based on BisB's *post-petition* conduct.  *See supra* at 2-3.  Only at

summary judgment did the Committee begin broadly conflating the Section 553(a)(3)(C) inquiry with its breach of contract arguments under Bahraini law, arguing that the Bankruptcy Court could "disallow" or "reject" BisB's setoff based on *pre-petition* events. (A1155 (Comm. Summary Judgment Br.) at A1176-88; A2399 (Comm. Summary Judgment Reply) at A2413-17.) The Committee repeated this approach on appeal to the District Court. (A6588 at A6648-67.)

The Committee attempts this conflation again here, analyzing its breach of contract claim under *both* Bahraini law – which it confines almost exclusively to the CBB's regulatory directive – *and* Section 553(a)(3)(C) of the Bankruptcy Code *and* unspecified "equitable principles." Comm. Br. at 39-49.

The courts below erroneously followed this approach, confusing the permissibility of BisB's setoff under Bahraini law with an extremely broad reading of a bankruptcy court's power to overturn foreign contract rights. *See Arcapita III*, 628 B.R. at 433-59; *Arcapita V*, 640 B.R. at 620-22, 627-29. But whether BisB breached its *murabaha* contract with Arcapita is a **legal** issue turning on the interpretation of **Bahraini law**, not an equitable one turning on the "goals and objectives" of the Bankruptcy Code. The lower courts erred in prioritizing the

latter over the former. This Court should reverse the error because BisB's setoff was proper under Bahraini law.[8]

## V. THE BANKRUPTCY COURT HAD NO AUTHORITY TO FIND A STAY VIOLATION BECAUSE IT LACKED JURISDICTION OVER BISB

As noted, BisB is not subject to personal jurisdiction here, and is thus beyond the authority of the Bankruptcy Code's automatic stay. *See supra* at 8-14; BisB Br. at 22-35, 52-53.

The Committee does not appear to dispute this limitation on the Bankruptcy Court's authority, but instead confusingly states that BisB violated the stay "regardless of whether such violation is actionable here." Comm. Br. at 49 n.35. But that is precisely BisB's point: any purported stay violation is *not* actionable here, because no personal jurisdiction lies over BisB. The finding of a stay violation should therefore be reversed.

## VI. THE LOWER COURTS ERRED BY IGNORING BAHRAINI LAW AND SHARI'A PRINCIPLES THAT PROHIBIT INTEREST FOR THE DELAYED PAYMENT OF A DEBT

The Committee's argument to this Court takes a remarkable, self-contradicting position: Bahraini law and shari'a principles prohibit interest, but the "American" concept of prejudgment interest is based on "compensatory" damages,

---

[8]    BisB again notes that the lower courts' factual findings under Section 553(a)(3)(C) were also clearly erroneous. BisB Br. at 41 n.15.

so the Bahraini Civil Code provisions for compensatory damages may be used to allow for prejudgment interest, even though it is prohibited by Bahraini law. Comm. Br. at 50-56.

This Court, in its exercise of *de novo* review, should reject this circular, absurd interpretation of Bahraini law.

### A. Shari'a Principles, Which Govern Bahraini Law, Absolutely Prohibit Interest for a Debtor's Delay in Paying a Debt.

As BisB's opening brief makes clear, shari'a principles govern Bahraini law, and shari'a principles – as embodied in AAOIFI standards – absolutely prohibit the collection of interest for a delay in repaying a debt. BisB Br. at 54-56 (citing AAOIFI, *Shari'ah Standard No. (3), Procrastinating Debtor*, at 88, http://aaoifi.com/ss-3-procrastinating-debtor/?lang=en (last visited Jan. 5, 2023) ("AAOIFI Standard No. 3").[9] This applies to both pre- and post-judgment interest, as both are forms of interest on the payment of a debt.

---

[9] AAOIFI Standard No. 3 specifically applies to Islamic banks such as Arcapita and BisB, and specifically applies to collections of debts from *solvent* debtors, notwithstanding the Committee's mistaken statement otherwise. AAOIFI Standard No. 3 at 87 (Preface), 88 (Scope of the Standard noting AAOIFI Standard No. 3 applies to a "solvent debtor"); *compare* Comm. Br. at 54. The Committee's suggestion that solvent debtors may nonetheless be "punished" for non-payment of a debt, *id.* at 54 n.38, is contradicted by the same appendix cited by the Committee, which states that such punishment may only be "non-material." *See* AAOIFI Standard No. 3 at 99.

The Committee agrees that Bahraini law governs the availability of prejudgment interest here, Comm. Br. at 50, and the courts below agreed that Bahraini law and shari'a principles prohibit paying interest. *Arcapita IV*, 633 B.R. 207, 211 (Bankr. S.D.N.Y. 2021); *Arcapita V*, 640 B.R. at 630-31. Yet they still decided that the "American" concept of prejudgment interest as compensation for the **delay** in payment of a debt can somehow be squared with this undisputed Bahraini prohibition on interest. *Arcapita IV*, 633 B.R. at 211 (prejudgment interest is "**delayed damages**" and a component of compensation) (emphasis added); *Arcapita V*, 640 B.R. at 630 (same).

This cannot be reconciled with AAOIFI Standard No. 3, which expressly bars any charge of additional compensation for any **delay** in settling a debt. BisB Br. at 55-56. The Standard further states:

> No penalty clause may be applied in the case of **a delay in setting a debt**, as any increase in the amount of the debt is Riba[.]

AAOFI Standard No. 3, Appendix (B) at 95.[10] It in turn defines "penalty clause" as additional compensation that will be due if an obligor to a contract "**delayed carrying it out**." *Id.* at Appendix (C) at 101.

---

[10] "Riba" is forbidden interest. (A1902 at A1919 ¶ 54; A1946 (Thomas expert report) at A1952, A1968, A1981.)

In sum, the courts below acknowledged that Bahraini law prohibits interest, but focused on the *compensation* provisions in the Bahraini Civil Code (*i.e.*, Articles 223, 140(a) and 188) because the "American" concept of prejudgment interest is based on *compensation*. *Arcapita IV*, 633 B.R. at 211; *Arcapita V*, 640 B.R. at 631. But that same "American" concept expressly views prejudgment interest as a type of compensation for *delayed payment – i.e.*, "delayed damages" – which is expressly barred by shari'a principles and Bahraini law.

The lower courts' circular and misguided reasoning should be reversed.

**B.** **The Bankruptcy Court Abused Its Discretion in Awarding Prejudgment Interest at the 9% New York Rate.**

Finally, the Committee mischaracterizes BisB's objection to the use of New York's 9% prejudgment interest rate as based only on "the import of BisB's **contacts with New York**." Comm. Br. at 54 (emphasis added). To the contrary, BisB objected to this rate based on the Bankruptcy Court's reliance on generalized "***contacts with the United States***" – not only the parties' use of New York correspondent bank accounts, but also the Bankruptcy Court's comparison of Arcapita's financing costs and hypothetical investment returns in the U.S., which ignored that the returns in *Bahraini* markets were much lower. BisB Br. at 57 (emphasis added).

In other words, for a dispute with the thinnest of connections to the United States – a momentary use of a New York bank account, with *everything* else

occurring in Bahrain, the Bankruptcy Court's reliance on the New York prejudgment interest rate *and* U.S. market returns and finance rates was an unreasonable abuse of discretion.[11]  Its prejudgment interest ruling should be reversed and the award of prejudgment interest against BisB vacated or, at minimum, reduced to the federal judgment rate.  *See supra* at 29 n.11.

## **CONCLUSION**

For the foregoing reasons, BisB respectfully asks this Court to reverse the District Court's Interlocutory PJ Order (*Arcapita I*) and its Order and judgment (*Arcapita V*), and remand this matter to the Bankruptcy Court for entry of judgment in favor of BisB.

---

[11]    Contrary to the Committee's apparent suggestion, the fact that BisB included a *de minimis* amount of prejudgment interest at the federal Treasury rate (0.738%) in a proposed order to the Bankruptcy Court is not a concession that Bahraini law allows for such interest.  Comm. Br. at 52.  Indeed, the Bankruptcy Court acknowledged BisB's argument that prejudgment interest violates shari'a principles and that it was proposing the federal rate in the alternative.  *See Arcapita IV*, 633 B.R. at 211.  As BisB argued to the Bankruptcy Court, this Circuit's precedent requires that for a judgment based on both state and federal law, federal law dictates the prejudgment interest rate.  (A3151 at A3158 (citing, among others, *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 (2d Cir. 2010).)

Dated: January 6, 2023           /s/ Robert T. Honeywell
       New York, NY        John A. Bicks
                                             Robert T. Honeywell
                                             K&L GATES LLP
                                             599 Lexington Avenue
                                             New York, NY 10022
                                             Telephone: (212) 536-3900

                                             Brian D. Koosed
                                             K&L GATES LLP
                                             1601 K Street, NW
                                             Washington, DC 20006
                                             Telephone: (202) 778-9000

                                             *Attorneys for Appellant Bahrain Islamic Bank*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.　　This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Local Rule 32.1(a)(4)(B) of the United States Court of Appeals for the Second Circuit because, exclusive of the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 6993 words.

2.　　This brief complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Dated:　January 6, 2023
　　　　New York, NY

　　　　　　　　　　　　　___/s/ Robert T. Honeywell_____
　　　　　　　　　　　　　John A. Bicks
　　　　　　　　　　　　　Robert T. Honeywell
　　　　　　　　　　　　　K&L GATES LLP
　　　　　　　　　　　　　599 Lexington Avenue
　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　Telephone: (212) 536-3900

　　　　　　　　　　　　　Brian D. Koosed
　　　　　　　　　　　　　K&L GATES LLP
　　　　　　　　　　　　　1601 K Street, NW
　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　Telephone: (202) 778-9000

　　　　　　　　　　　　　*Attorneys for Appellant Bahrain Islamic Bank*